## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DK HOLDINGS<br>d/b/a DOTCOM HOST,<br><br>                                      Plaintiff,<br><br>v.<br><br>MIVA, INC., et al.,<br><br>                                      Defendants. | Case No.:  16-CV-0580 W (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES [DOC. 25]** |

     Pending before the Court is Plaintiff's motion to dismiss Defendants' counterclaims and to strike affirmative defenses. [Doc. 25.]  The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion.

//
//
//
//
//
//

1

## I.   BACKGROUND[1]

Plaintiff DK Holdings, doing business as DotCOM Host, is a California partnership in the business of hosting websites for commercial clients. (*Compl.* [Doc. 1] ¶¶ 5–9.) Defendants Miva, Inc., and Miva Merchant offer e-commerce software for use on these websites. (*Id.* [Doc. 1] ¶¶ 10–11.)

Plaintiff purchased licenses to Defendants' e-commerce software, which it then offered to its clients via its hosting services. (*Compl.* [Doc. 1] ¶ 11.) It paid a one-time fee for a perpetual license to use the software in this way. (*See id.*) At some point, after years of Plaintiff's use of the software, Defendants switched to a monthly license fee model. (*See id.* [Doc. 1] ¶ 13.) In essence, Defendants represented that an additional monthly fee—for software Plaintiff had already purchased—would cause Defendants to provide new features and continuous upgrades. (*Id.* [Doc. 1] ¶ 14.)

At some point after Plaintiff agreed to the monthly fee for the software upgrades and support, Defendants used their knowledge of Plaintiff's clientele to contact its clients and tell them that Defendants would support the software only if they moved their businesses to Defendants' own hosting services. (*Compl.* [Doc. 1] ¶ 17.) To commercial clients who relied on this e-commerce software as part of their business models, this implied that customers would have to switch hosting away from Plaintiff in order to continue doing business with the latest version of the software. (*See id.* [Doc. 1] ¶¶ 19–20.)

Defendants "began assessing escalating non-compliance fees for [Plaintiff's clients] using Defendants' software who did not upgrade to the latest version of [the] software, and assessed those fees even for continued use of copies of [the software] for which [Plaintiff] owned a perpetual, fully paid[-]up license." (*Compl.* [Doc. 1] ¶ 21.) They abruptly escalated their monthly fees to Plaintiff and its clients, while offering the

---

[1] The Complaint alleges the following facts. [Doc. 1.]

2

licenses at much lower costs to those who switched to their own hosting services. (*See Compl.* [Doc. 1] ¶¶ 22–24.) They assessed an "end of life fee" for continued use of the software, even for copies that Plaintiff had already purchased. (*See id.* [Doc. 1] ¶ 26.) They falsely told Plaintiff's clients that Plaintiff would soon cease to offer its services, that the clients would have to switch to Defendants' hosting services if they wished to continue doing business as usual, and that Plaintiff had already "maliciously" shut off services for two large clients. (*See id.* [Doc. 1] ¶¶ 27–33.) Finally, they accessed Plaintiff's client information "for the purpose of transferring data to Defendants' in-house hosting." (*See id.* [Doc. 1] ¶ 34.)

Plaintiff filed this action on March 7, 2016. (*Compl.* [Doc. 1].) The Complaint alleges six causes of action: (1) for computer fraud and abuse in violation of 18 U.S.C. § 1030; (2) for false advertising in violation of 15 U.S.C. § 1125; (3) for a declaration of copyright misuse and unenforceability; (4) for computer fraud in violation of Cal. Penal Code § 502; (5) for interference with contractual relations; and (6) for unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq. (*Id.*)

Defendants filed an Answer and Cross-complaint on April 21, 2016. [Doc. 8.] The Answer denies many of the above allegations. (*See Answer and Cross-complaint* [Doc. 8].) But it does make clear, implicitly or otherwise, that: (1) Defendants hosted websites in addition to selling e-commerce software licenses to other web hosts (*see Answer* [Doc. 8] ¶ 135); (2) Defendants charged different prices to customers who hosted with them rather than with other hosts to whom they licensed their e-commerce software (*see id.* [Doc. 8] ¶ 35); and (3) Defendants made overtures to Plaintiff's clients in order to convince them to move their web hosting from Plaintiff to Defendants. (*See id.* [Doc. 8] ¶ 124.)

//
//
//
//

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Motion to Strike Pursuant to Rule 12(f)

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). " 'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . .

.' " Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)).  Motions to strike are generally disfavored and are "usually . . . denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  See Travelers Cas. & Sur. Co. of Am. v. Dunmore, 2010 WL 5200940, at *3 (E.D. Cal. 2010).

Redundant matter is the needless repetition of assertions.  See Travelers, 2010 WL 5200940, at *3.  " 'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead.' " Whittlestone, 618 F.3d at 974 (quoting Fogerty, 984 F.2d at 1527).  "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id. (internal quotation omitted).  "Scandalous matters are allegations that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court . . . and include . . . allegations that cast a cruelly derogatory light on a party or other person." Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quoting Corbell v. Norton, 224 F.R.D. 1, 5 (D.D.C. 2004)) (internal punctuation omitted).

The court may not strike from the pleadings any disputed and substantial factual or legal issue.  See Whittlestone, 618 F.3d at 973–74 (9th Cir. 2010).  Any doubt about whether the matter under attack raises a factual or legal issue should be resolved in favor of the non-moving party.  See id. at 975 n.2.

### III.   DISCUSSION

#### A.   Plaintiff's Motion to Dismiss Defendants' Third Counterclaim

Plaintiff moves to dismiss Defendants' third counterclaim for failure to state a claim because it does not allege facts to support a plausible inference that Plaintiff breached the contractual provision it cites.  (Pl.'s Mot. [Doc. 25-1] 3:15–4:8.)

5

1  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Defendants' third counterclaim alleges that "Section 3.10 of the Agreement establishes an express obligation on the part of Plaintiff to 'offer the [Miva Merchant] Software as the EXCLUSIVE e-commerce store front solution for Commerce Accounts distributed by [Plaintiff] to [Plaintiff's] customers.'" (*Answer and Cross-complaint* [Doc. 8] ¶ 157 (quoting *Hosting Partner Distribution Agreement* [Doc. 8 Exh. A] § 3.10).) It further alleges that "[i]n breach of the Agreement, Plaintiff has failed to perform its obligations arising under Section 3.10 in that Plaintiff has in 2016 and at other times . . . failed to offer Miva Merchant to Plaintiff's customers as Plaintiff's exclusive e-commerce store front solution. Instead, Plaintiff has placed links to several of Miva, Inc.'s direct competitors on its website, thus promoting . . . direct competitors instead of Miva, Inc." (*Id.* [Doc. 8] ¶ 158.)

Plaintiff contends that this single factual allegation is not sufficient to allege breach because it did not contract to exclusively promote the software in section 3.10, but rather to exclusively offer it to its customers. (*Pl.'s Mot.* [Doc. 25-1] 3:15–4:8.) Indeed, section 3.10 of the relevant contract does not establish an obligation to exclusively promote Defendants' services.[2] (*See Hosting Partner Distribution Agreement* [Doc. 8, Exh. A] § 3.10.) As the third cross-claim's only factual allegation is that Plaintiff breached section 3.10 of the contract by failing to exclusively promote—an obligation that section 3.10 did not create—the third counterclaim does not rise to the plausible level. See Iqbal, 556 U.S. at 678.

---

[2] The Court may properly consider evidence of this contract in this motion because the Cross-complaint both refers to and necessarily relies on the document, which is central to the claim, and no party has questioned its authenticity. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

Defendants' third counterclaim will be dismissed.

### B. Plaintiff's Motion to Dismiss Defendants' Fifth Counterclaim, for Declaratory Relief

Plaintiff moves to dismiss Defendants' fifth counterclaim, for declaratory relief, on the basis that it duplicates the breach of contract counterclaims. (*Pl.'s Mot.* [Doc. 25-1] 4:9–22.)

"The decision to grant declaratory relief is a matter of discretion[.]" United States v. State of Wash., 759 F.2d 1353, 1356 (9th Cir. 1985). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." Id. at 1357. Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties. Id.

Here, Defendants' declaratory relief counterclaim offers no specifics whatsoever—no hint as to what controversy might be resolved through a judicial declaration. (*See Answer and Cross-complaint* [Doc. 8] ¶¶ 173–176.) It alleges only that "Miva, Inc. desires a judicial determination of its rights and duties under the Agreement and Addendum." (*Id.* [Doc. 8] ¶ 176.) As such, there are insufficient factual allegations to give rise to a plausible inference that a declaratory judgment would afford relief from any uncertainty or controversy beyond that which would be resolved through resolution of the breach of contract claims. See State of Wash., 759 F.2d at 1356; Iqbal, 556 U.S. at 678.

Defendants' fifth counterclaim will be dismissed.

//
//
//
//

### C. Plaintiff's Motion to Strike Defendants' First and Third Affirmative Defenses

Plaintiff moves to strike Defendants' first and third affirmative defenses. (*Pl.'s Mot.* [Doc. 25-1] 4:25–5:22.)

Defendants' first affirmative defense asserts that Plaintiff fails to state a cause of action against Defendants, and the third asserts the defense of lack of causation. (*See Answer and Cross-complaint* [Doc. 8] 29.) These are purported defects in Plaintiff's claims—not affirmative defenses. They are redundant and immaterial in this context. See Fed. R. Civ. P. 12(f).

Defendants' first and third affirmative defenses will be stricken.

### D. Plaintiff's Motion to Strike Defendants' Remaining Affirmative Defenses

Plaintiff moves to strike Defendants' remaining affirmative defenses for failure to provide notice per Federal Rule of Civil Procedure 8. (*Pl.'s Mot.* [Doc. 25-1] 5:23–7:4.)

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Wyshak v. City Nat. Bank, 607 F.2d 824, 827 (9th Cir. 1979). As the pleading standard set forth in Twombly and Iqbal is grounded in Federal Rule of Civil Procedure 8(a)(2), which governs claims, rather than Federal Rule of Civil Procedure 8(c), which governs affirmative defenses, the standard developed in those cases does not apply in this context. See Kohler v. Staples the Office Superstore, LLC, 291 F.R.D. 464, 467–68 (2013). Rather, the focus is on fair notice—an affirmative defense may not deprive the plaintiff of an opportunity to rebut it or to adjust litigation strategy appropriately. See Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010) (internal quotation omitted).

Defendants' Answer and Cross-complaint pleads fourteen additional affirmative defenses, none of which allege any facts that might relate them to Plaintiff's claims. (*See Answer and Cross-complaint* [Doc. 8] 29–33.) This is problematic, as there is no

indication of how the defenses might apply. It is difficult to respond to generic allegations that have no discernable connection to the case.

For instance, Defendants' second affirmative defense alleges, without more, "that the acts and conduct of [Miva] at all relevant times were justified, fair, and reasonable under the given circumstances and taken in good faith." (*See id.* [Doc. 8] 29.) Its seventh defense alleges, without more, "that Plaintiff waived the claims in the Complaint and has waived any rights to recover any damages or to obtain any relief therein." (*See id.* [Doc. 8] 30.) Its eighth defense alleges, without more, "that any liabilities of [Miva] as alleged in the Complaint have been extinguished and released." (*See id.*) Each of the defenses falls into the same pattern. Without any facts at all to relate them to the case, they do not provide Plaintiff with the requisite fair notice.

Each of Defendants' remaining affirmative defenses will be stricken.

### E.  Plaintiff's Motion to Strike Defendants' Prayer for Specific Performance

Plaintiff moves to strike Defendants' prayer for specific performance of certain contractual obligations. (*Pl.'s Mot.* [Doc. 25-1] 7:5–20.)

Under California law, an obligation to render personal service or to employ another in personal service cannot be specifically enforced. Cal. Civ. Code § 3390(1). This "rule evolved because of the inherent difficulties courts would encounter in supervising the performance of uniquely personal efforts." Barndt v. Cty. of Los Angeles, 211 Cal. App. 3d 397, 403 (1989). An order requiring personal service would impose upon the issuing court the job of supervising that service and judging its quality—an arduous task. See id. Moreover, "the common law disfavored specific performance to avoid the friction and social costs that often result when employer and employee are reunited in a relationship that has already failed . . . . This rationale is particularly applicable where the services to be rendered require mutual confidence among the parties and involve the exercise of discretionary authority. Id. at 404. In this way, section 3390(1) is the statutory analogue

to the common-law rule that courts should not order specific performance "where the contracts stipulate a succession of continuous acts which require protracted supervision and direction by the court with the exercise of special knowledge, skill, and judgment by the parties performing the acts." See Ellison v. Ventura Port District, 80 Cal. App. 3d 574, 580 (1978).

Here, Defendants seek specific performance of the following provisions of the relevant contract: (1) to require Plaintiff to promote Defendants' software; (2) to require Plaintiff to exclusively offer Defendants' software through its hosting services; (3) to require Plaintiff to place a link to Defendants' webpage on its website; and (4) to cease "any and all conduct that results in turning off or otherwise blocking Miva, Inc. from accessing Plaintiff's clientele's e-commerce websites that use Miva Merchant software or otherwise interrupting communications between Miva, Inc. and such third parties." (*See Answer and Cross-complaint* [Doc. 8] 42:26–43:9.)

The first, second, and fourth parts of Defendants' prayer for specific performance request judicial enforcement of a continuous series of acts involving the exercise of discretion between two parties to a business relationship that has clearly experienced a falling out. Not only would this type of enforcement entail significant social costs, but it would place an onerous supervisory burden on the court in order for the decree to have any meaningful effect. See Barndt, 211 Cal. App. 3d at 403–04. Such an order would run counter to section 3390 and the policies underlying it. As such, these portions of Defendants' prayer are impertinent. See Fed. R. Civ. P. 12(f). There is no such issue with the third component of Defendants' request for specific performance—requiring Plaintiff to place a link a website.

The first, second, and fourth components of Defendants' prayer for specific performance will be stricken.

//
//
//

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART.**

Specifically, Defendants' third and fifth counterclaims are dismissed. Each of Defendants' affirmative defenses are stricken. The first, second, and fourth components of Defendants' prayer for specific performance are stricken.

Defendants will have leave to amend the Answer and Cross-complaint. See Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.") Plaintiffs shall amend the Answer and Cross-complaint, if at all, by **Monday, October 3, 2016.**

**IT IS SO ORDERED.**

Dated:  September 16, 2016

_____
Hon. Thomas J. Whelan
United States District Judge